SHAW v. ANDREWS et al.

(Circuit Court, S. D. New York. July 10, 1894.)

1. CONTRACTS—CONTEMPORANEOUS CONSTRUCTION BY PARTIES.
    Evidence of the opinion of the parties to a contract as to its meaning, not carried into effect by any act, does not show such a contemporaneous construction as should govern its interpretation.

2. PATENTS—ASSIGNMENT FOR SHARE IN PROFITS OF ASSIGNEE.
    An agreement for assignment of a patent, including claims for infringement and royalties, provided for the collection of royalties and suing of infringers by the assignees, and that they should manage the patent as they might deem best for the interest of all parties; that the assignor should be paid one-fourth of the net proceeds of the business; and also fixed a basis for prices of royalties. *Held,* that the assignor was entitled to share in the profits of the assignees from their own use of the patent, as well as in the royalties therefor.

In Equity. This was a suit by Jehyleman Shaw against William D. Andrews and others for an accounting for a share of royalties and profits under an assignment of a patent.

Thomas M. Wyatt, for plaintiff.
William Man, for defendants.

WHEELER, District Judge. The defendants were the owners of the patent to Green for driven or tube wells. Eames v. Andrews, 122 U. S. 40, 7 Sup. Ct. 1073. The plaintiff was the owner of patent

No. 101,774, dated April 12, 1870, for an improvement on such wells by connecting several together. On August 16, 1881, they entered into a written agreement that the plaintiff should assign his patent, including all claims for infringement and royalties remaining unpaid, to the defendants, and that they should "proceed to demand royalties from parties infringing, and endeavor to secure recognition of the said letters patent, and so manage the same as they may deem best for the interest of all parties concerned, and to bring suit or suits in the United States courts against parties infringing, for the purpose of establishing and sustaining the validity of said letters patent, if it appears to them to be good policy so to do;  *  *  *  advance the necessary means for conducting the said business and prosecuting any suits they may so bring, assuming and paying all the costs and expenses, and looking to the proceeds of the business for their remuneration;" "that all costs, charges, and expenses of whatever nature or kind incurred for and in the prosecution of the business aforesaid shall be first paid out of the proceeds, after which," the plaintiff should be paid quarterly one-fourth of the net proceeds, and the remaining three-fourths should belong to the defendants; that the "general basis for prices of royalties shall be for first-class wells, of two inches internal diameter, twenty-five dollars per tube, with such discounts for wells of less capacity, or wells used for fire purposes alone, for condensing or other special purposes, or for inferior water, as may be considered just and proper by" the defendants; and that the defendants should make no charges for their personal services. The plaintiff accordingly assigned his patent to the defendants, who collected royalties from various sources, and themselves put in water systems of tube wells for the city of Brooklyn and other places, using the devices of the plaintiff's patent, for which they received large sums. They have accounted to the plaintiff for all the royalties collected of other persons according to the agreement, and have overpaid him what would be due for royalties at $25 each on the tubes of these systems put in by them, but have not accounted for the profits, if any, arising to them from the use of the plaintiff's invention patented in the patent assigned to them in putting in these systems. This suit is brought for an account of the whole. None is necessary unless the plaintiff is entitled to share in those profits. All appear at first, and while the systems were being put in, to have referred to the plaintiff's right as being to a share in the royalty on these tubes, and not in these profits. But no agreement to so treat them appears to have been made. No change in the course of business is shown to have been made by the defendants because of this treatment of his right by the plaintiff. The defendants did not make quarterly payments on that nor any basis according to the contract, and no settlement between the parties on that basis has been effected. This is relied upon in behalf of the defendants as such a contemporaneous construction of the contract in this respect that it should govern. But this view of the contract does not seem to have been carried far enough to amount to any practical construction. It remained in opinion, instead of being carried into effect by act.

The defendants insist, also, that they were, by the terms of the contract itself, to deal only with infringements and royalties, and that the plaintiff had no interest in the patent left to him beyond his one-fourth share in what might be realized from royalties, as such, and from infringements. The collection of royalties and suing of infringers' were alone expressly provided for as things to be done by the defendants; but, in addition, they were generally to "so manage the same"—that is, the patent—as they might deem best for the interest of all. These water systems could not be put in but under, or by infringement of, this patent. As they held it, they could not be infringers of it, and putting in the systems by them while they so held it must have been under it, and a part of their management of it. This seems to be a part "of the business aforesaid," one-fourth of the net proceeds of which was to be paid to the plaintiff.

Let a decree be entered for an account.