## William C. Heimbuecher v. Goff, Horner & Company, Limited, et al.

### Gen. No. 11,829.

1. CONTRACT—*when third party cannot rely upon particular construction of.* In the absence of evidence that a third party has been misled by mere words, the law is that such party cannot set up such words as a conclusive construction of the contract.

2. CONTRACT—*who may not construe.* The agent of parties to a contract cannot by words give a construction thereto not warranted by its terms and thus bind the principals.

3. CONTRACT—*when not illegal.* A particular contract set out, held, not in restraint of trade nor forbidden by the anti-trust law of this state nor in violation of the terms of the Sherman Act.

4. CONTRACT—*when not void.* A contract by which one corporation binds itself to buy all its raw materials from and to sell all its manufactured products to another corporation, is not void.

5. GARNISHMENT—*what cannot be reached by.* Where A buys goods of B, and C at the direction of B fills the order, a creditor of B cannot recover through attachment and garnishment, brought in the name of C, a debt thus accruing from A to B.

6. ATTACHMENT—*when dismissal of, cannot be complained of.* Where the plaintiff in the attachment proceeding is not a party to the bill and the judgment appealed from relates solely to the judgment of the court entered with respect to the interplea, the action of the court in dismissing the attachment suit is not subject to review.

Attachment proceeding. Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed March 27, 1905.

**Statement by the Court.** In May, 1901, appellant entered into a contract with the Curtis Sheet Steel & Corrugating Co., of Ohio, (now the Muskingum Valley Steel Co.), by which he was allowed to sell 500 tons of corrugated material and sheet iron per month, and to receive a commission of 50 cents a ton for goods so sold. Goff, Horner & Co. is a limited partnership association of Pittsburg, Pennsylvania. January 25, 1902, Goff, Horner & Co. made a contract with the Muskingum Valley Steel Co. (hereinafter called the

Steel Co.), which contract is hereinafter substantially set out.

This suit is a proceeding in attachment begun October 23, 1903, in the Superior Court in favor of appellant and against "The Muskingum Valley Steel Co., also doing business under the name, style and description of Goff, Horner & Co., Limited, of Pittsburg, Pennsylvania," claiming that the Steel Co. was indebted to appellant in the sum of $3,212.50, "for money due to the plaintiff from the defendant for wages, salary and commission." No property belonging to the defendant, the Steel Co., was found, but the writ was served upon several firms and corporations as garnishees. Afterward, by stipulation, the cause was dismissed as to all these garnishees except the Wheeling Corrugating Co., (hereinafter called the Wheeling Co.). That company answered that at the time of the service of the writ it owed nothing to the Steel Co., but that it did owe Goff, Horner & Co. the sum of $4,906.24. The Steel Co. did not appear, but was brought in by publication. Goff, Horner & Co. entered a special appearance and filed an interplea, claiming the money in the hands of the Wheeling Co. Appellant traversed this plea. It was stipulated for the purpose of the trial that appellant was a creditor of the Steel Co., and that such indebtedness accrued during the fall of 1901. In the trial of the interplea before the court without a jury, judgment was rendered for the interpleader, the garnishee was discharged, and the suit was dismissed at the cost of appellant. From this action of the trial court appellant perfected the present appeal. It is in evidence that in April, August and September, 1903, the Wheeling Co. sent various orders for materials to Goff, Horner & Co., which the latter company caused to be filled by the Steel Co. under the contract existing between them. These goods were shipped to the Wheeling Co. in the name of the Steel Co. as consignors. The money due upon these shipments was represented by the said sum of $4,906.24 found in the hands of the Wheeling Co.

The contract between Goff, Horner & Co. of the first part, and the Steel Co. of the second part, which contract was in

force and effect at the time this suit was commenced, as abstracted by appellant, is as follows:

"First party is extensively engaged in purchase and sale of iron and steel and its products, and has large facilities for the purchase and sale of same; that second party is engaged in the manufacture of same, and needs to buy large quantities thereof, and to have a ready purchaser for these products when manufactured, and the said parties agree that first party furnish all the material and that second party manufacture the same into sheets and thereupon sell the same to first party at the terms, prices and under the specifications, conditions and limitations thereinafter contained. Consideration of one dollar and the mutual covenants and agreements therein set forth, and further consideration of the purchase by the individual members of the first party of a certain amount of treasury stock of the second party, and the further consideration that first party sell to second party all steel at the option of first party, of standard weight and size required by the second party, and the iron and steel scrap, party of the first part, at its option, may see fit to deliver, being the entire requirement of the party of the second part to operate its mills to the fullest capacity, during the life of the contract, first party having the option, providing it deliver sheets and bars, to make same long or short, and to cut long bars, a charge for cutting being provided for, grade to be designated by first party, it being agreed that if the first party prefers to furnish scrap iron or steel in lieu of the billets or bars, or any portion, that it shall have the option of doing so to the extent of the capacity of furnaces of the second party, and to the extent of the capacity of the bar mills of second party to convert scrap into bars.

First party to have option of shipping steel billets in any quantity it desires to full capacity of the mills of second party. Second party shall manufacture and sell to first party all steel and iron sheets of all grades and sizes and finish to full requirements of first party as specified by first party, specifications being set forth, first party to pay therefor the prices listed.

Third.  Place of delivery fixed F. O. B. cars at the mills of the second party, Zanesville, Ohio.

Fifth.  First party assumes and agrees to perform all contracts for sheets now made by second party, and to take and pay for all billets and bars at present prices, F. O. B. cars, Zanesville.  All contracts to go through the office of and be approved by first party.

Sixth.  That when galvanizing department of second party, is completed, first party to have option of specifying for galvanized sheets up to the full capacity thereof.  The price first party is to pay to bear same proportionate price as for one pass, cold rolled, single annealed, plus a fair percentage of profits for extra work.  Price to be agreed on when cost is indefinitely ascertained.

Seventh.  Contract to run for one year from date with option of first party to have same extended upon giving sixty days' notice in writing before expiration thereof.

Eighth.  The first party to furnish all material necessary to produce sheets required or specified by first party, which material second party is to convert into sheets and delivered to first party; the amount to operate the mills one year estimated at 9,000 tons necessary to produce, as estimated, 8,000 tons of sheet, said estimate being capacity of mills. Second party agrees to operate its mills to said capacity diligently and continuously if material is furnished to it by first party, and specifications, and if any tonnage has been lost by reason of strikes, etc., as provided in clause four, that said loss be made up by second party at the end of year if first party so desires.

The amount of material to be furnished by first party and manufactured by second party is at the option of first party; said first party agrees to make diligent effort to furnish enough material and specifications, and buy enough of the manufactured sheets to keep second party's mills running to full capacity, but failure to do so shall not impair this contract.

Ninth.  It is agreed that second party guarantee to indemnify first party from all loss or damage from defective qual-

ity of sheets manufactured, shortage in weight and other causes.

Tenth.    Agreed that mills of second party shall not be diminished in any manner, and any additions made to mills whereby their capacity is increased shall be used to increase the purchase from and sale to first party.

Eleventh.    Further agreed that second party refer all inquiries regarding manufactured products to first party and second party shall not sell any of its products to any other party, except first party, or purchase any material from any other party than first party, except with the consent of first party.

Twelfth.    Contract to be mutually binding upon parties, their successors or assigns, and no defense of non-performance shall be set up by either party for any cause, the contract being mutual and bilateral, based upon good and valuable considerations, its spirit being that first party shall use its utmost endeavor to furnish second party enough material and specifications and purchase from second party enough finished products to keep second party's mills operated to full capacity, and shall only be excused therefrom if trade conditions were such that same could not be done with reasonable profit to first party."

Candlish & Hamblen, for appellant.

Moses, Rosenthal & Kennedy, for appellees.

Mr. Presiding Justice Ball delivered the opinion of the court.

The contract between Goff, Horner & Co. and the Steel Co. does not create the relation of principal and agent. In plain terms it is a contract by Goff, Horner & Co. to sell to the Steel Co. all the material the latter needed to keep its mills running to their full capacity, and by the Steel Co. to sell to the former the entire output of such mills. The terms of sale, the price of the materials furnished, the place of delivery of the product and the price thereof, are fully provided for and set out in the contract. In the 12th clause

thereof the parties declare that the contract is mutual and bilateral, and based upon a good and valuable consideration, "its spirit being that Goff, Horner & Company shall use its utmost endeavor to furnish the Steel Co. with enough material, on specifications, and purchase from the Steel Co. enough finished products to keep its mills operated to the full capacity," etc.

October 27, 1903, the secretary and treasurer of Goff, Horner & Co., upon the letter-head of that company, bearing the legend, "Representing the Muskingum Valley Steel Co.," wrote appellant the following: "We, therefore, call you attention to the fact that our firm here has nothing whatever to do with the Muskingum Valley Steel Co. other than as sales agents for their sheets, the two companies being entirely separate and distinct. * * We have nothing more to do with your claim against the Muskingum Valley Steel Company than we would have regarding a claim against the United States Steel Corporation." This letter appellant claims construes the contract in question as one of agency. We do not so understand it. There is no evidence in the record that appellant ever acted upon these words, or changed his position because they were written. The claim of appellant accrued in the fall of 1901, and this letter was not penned until after this suit had been commenced. In the absence of evidence that a third party has been misled by mere words, the law is that such party cannot set up the words as a conclusive construction of a contract. Evidence of the opinion of the parties to a contract as to its meaning, not carried into effect by any act, does not show such a contemporaneous construction as must govern in its interpretation. Shaw v. Andrews, 62 Fed., 460. Agents of the parties cannot by words give a construction to a contract not warranted by its terms. Nor is the fact that the goods were shipped from the plant of the Steel Co., in its name as consignor, controlling. It is undisputed that these goods were purchased by the Wheeling Co. from Goff, Horner & Co., and that the latter company directed the Steel Co. to fill these orders under the contract existing between

them.   The Steel Co. so did, and received the pay for the same before this suit was brought.   It follows that the Wheeling Co. became indebted to Goff, Horner & Co. for these goods, and that the relation of principal and agent did not exist between Goff, Horner & Co. and the Steel Co. in this transaction.   Such being the legal relations of the parties, the Steel Co. could not recover from the Wheeling Co. the proceeds in controversy, and it follows that appellant had no right to run an attachment in the name of the Steel Co. for his use and apply the proceeds in the hands of the garnishee in satisfaction of his debt.

We do not regard this contract as one in restraint of trade and, therefore, illegal and void.   Nor do we think it is forbidden by the anti-trust law of this state, or by the Sherman Act.   There is neither allegation nor evidence here that this contract tended to produce a monopoly, or was in restraint of trade, or enabled the parties thereto, or either of them, to monopolize the market, or that it had anything to do with commerce.   This contract is a plain every-day contract, by which one corporation binds itself to buy all its raw materials from and to sell all its manufactured product to another corporation.   Such a contract, taken by itself, is harmless.   He who asserts that it is illegal and void must by proper averments and competent evidence show such invalidity.   By entering into this contract the Steel Co. was able to get all the raw material necessary for the prosecution of its business, and was also able to sell at once, without going into the market to search out a possible buyer, the entire output of its factory, at a satisfactory price, thus wiping out many of the difficulties which beset the producer.   Under this contract the raw materials became the property of the Steel Co., and it became the debtor of Goff, Horner & Co. for their value, and the latter company became the owner of the manufactured product of the Steel Co. and its debtor for its value. It is a purchase in bulk of the raw materials on the one hand and the purchase in like manner of the finished product, on the other hand.   U. S. v. Nelson, 52 Fed. 646; Carter v. Peurrung, 86 Fed., 439; U. S. v. Knight, 156 U. S. 1; Hop-

kins v. U. S., 171 U. S., 578; Anderson v. U. S., 171 U. S., 604; Field v. Barber Asphalt Co., 194 U. S., 623. There is no evidence in the record that this contract was made to hinder and delay the creditors of either party to it, and hence it is legal and binding not only as to the parties executing it, but also as to third parties.

The only order which was appealed from, as shown by the condition of the appeal bond, is the judgment for, costs in favor of Goff, Horner & Co. and the Wheeling Corrugating Co. on "its certain interplea and answer as garnishee severally," from which appellant prayed for and obtained the present appeal. The Steel Co. is not made an appellee. That company is the only party interested in sustaining the order of the trial court in dismissing the attachment suit. Hence we think that this point is not properly before us. But if it were, it was not reversible error to dismiss that action. The court below found in favor of the interplea and sustained the answer of the garnishee, thus deciding that the money in dispute belonged to Goff, Horner & Co., and that the Steel Co. had no property therein. The evidence clearly shows that the Steel Co. was never indebted to appellant. Therefore, the court discharged the only garnishee, and as the Steel Co. had not been served and had not been brought in or appeared in the attachment suit, and none of its property had been seized under the writ, the court properly, we think, dismissed the attachment suit.

The controlling questions in the case being thus disposed of, and as, under the evidence, the appellant has no right of recovery, it is unnecessary for us to discuss his further contentions.

The judgment of the Superior Court is affirmed.

*Affirmed.*